**ALLIANZ INSURANCE COMPANY,**
**Plaintiff,**

v.

**RJR NABISCO HOLDINGS CORP,**
**RJR Nabisco Inc., and Nabisco,**
**Inc., Defendants.**

No. 99 CIV. 2297 (JSR).

United States District Court,
S.D. New York.

May 15, 1999.

Mark Wolf, Claussen & Willier, New York City, for plaintiff.

Jerome G. Snider, Davis Polk & Wardwell, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

It seems that even if one insures against "all risks," one cannot insure against a lawsuit. In this action, plaintiff Allianz Insurance Company ("Allianz") seeks a declaratory judgment that its "all risk" insurance policy does not cover the contamination damage to insured food products that the defendants (collectively "Nabisco") suffered as a result of a third party's actions. After issue had been joined, both sides moved for summary judgment. Following oral argument and review of the parties' submissions, the Court informed the parties on January 10, 2000 that defendant's motion would be granted and plaintiff's motion denied. This Memorandum Order will formally confirm those rulings and briefly state the reasons therefor.

It is undisputed that at all relevant times Nabisco's food products were insured under policies issued by Allianz and other insurance companies that provided "all risk" coverage for fortuitous losses to the covered property except where such losses were expressly excluded.[1] See Decl. of Harold K. Gordon ("Gordon Decl."), Ex. A, at 8/43; Aff. of William Stephens ("Stephens Aff."), Ex. A, at 8/52. Such express exclusions included (among others) "[l]oss or damage caused by or resulting from contamination unless such loss or damage results from a peril not otherwise excluded

...." See Gordon Decl. Ex. A at 9/43; Stephens Aff. Ex A at 10/52. It is the meaning of this phrase that is here in dispute.

On September 1, 1998, Nabisco entered into an agreement with American Union Logistics, Inc. ("AUL"), under which AUL agreed to "store Nabisco's food products" in AUL's newly constructed warehouse, located in Woodridge, Illinois, and to "assist in the distribution of these products." Aff. of Al Brown ("Brown Aff") at ¶ 2. Nabisco began moving its products into the warehouse on September 2, 1998, and continued to do so over the next two months. See id. at ¶ 3. In late October, 1998, Nabisco began receiving numerous telephone calls on its toll-free customer service line "concerning a chemical odor and flavor in various Nabisco products." Id. ¶ 4. After investigation, Nabisco determined that all the affected products had been stored in the AUL warehouse, see id. at ¶ 5, and that they all contained trimethyl benzene ("TMB"), a chemical that, while posing no health risk, "would cause a strong displeasing odor and taste in food products," id. at ¶ 11. Still further investigation revealed that the construction company that had built the AUL warehouse had stripped and sealed the concrete floor with chemicals containing TMB, which, according to Nabisco, the company had failed to seal and clean up properly, thus leading to the contamination of the subsequently-stored foodstuffs. See id. at ¶ 6. Based on its investigation, Nabisco recovered and destroyed over one million cases of food that had been stored at the AUL warehouse. See id. at ¶¶ 11–12.

---

1. Although the parties appear to disagree about precisely which of a series of plaintiff's policies purchased by defendants was in force at the time of the underlying losses here involved, this disagreement is of no moment here since the parties are agreed that the language of the exclusion clause that presents the only legal issue in this case is identical in all of these policies. See transcript of oral argument of 12/29/00 ("Tr."), at 15. Also, while there was some suggestion in the parties' "Rule 56" statements of a possible dispute regarding whether Nabisco, Inc., as distinct from RJR Nabisco, Inc., was covered by the policy in question, see, e.g., Def. Response to Pl. 56.1 Stmt. ¶ 1–2; Pl. Response to Def. 56.1 ¶¶ 8, 10, the issue was effectively abandoned when the parties stipulated to the intervention of Nabisco, Inc. as a party to this suit, see Stipulation, dated Sept. 16, 1999, and Allianz did not argue in its memoranda of law or at oral argument that this Court should find that Nabisco, Inc. is not covered by the policy.

Nabisco thereupon submitted a claim for this loss to Allianz and its co-insurers. *See* Gordon Decl. Ex. C. In turn, Allianz and the co-insurers denied the claim, thus precipitating litigation in various fora. *See, e.g., American Home Assurance Co. v. RJR Nabisco Holdings Corp.,* 70 F.Supp.2d 296 (S.D.N.Y.1999).

In the instant action, Allianz, although denying that AUL acted negligently, *see* Pl. Response to Def. 56.1 Stmt. ¶ 20, does not for the purposes of this lawsuit dispute that the AUL warehouse was the source of the contamination, *see* Pl. 56.1 Stmts. ¶¶ 17–22. Rather, Allianz seeks a declaration that coverage of the loss is nonetheless barred by the above-quoted exclusion.

 Under New York law, which here applies (*see* Tr. at 23), the insurer bears the burden of proving that a given claim falls within an exclusion to an "all risk" policy. *See, e.g., Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (Ct.App. 1984); *Pan American World Airways v. Aetna Casualty & Surety Co.,* 505 F.2d 989, 999 (2d Cir.1974). Such "exclusions will be given the interpretation which is most beneficial to the insured." *Pan American* at 999. Furthermore:

> [W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so "in clear and unmistakable" language. Any such exclusions ... are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.

*Seaboard Surety* at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272.

 Here, as mentioned, the exclusion clause on which Allianz relies excludes "[l]oss or damage caused by or resulting from contamination unless such loss or damage results from a peril not otherwise excluded." This somewhat awkward wording, in effect a double negative, was drafted by the insurers, possibly so as to try to come within the doctrine that places on the insured the burden of demonstrating that an exception to an exclusion applies. *See Monteleone v. Crow,* 242 A.D.2d 135, 140, 673 N.Y.S.2d 408 (1st Dep't 1998). But regardless of who bears the burden of proof, the only reasonable reading of this language is that contamination losses resulting from perils otherwise covered by the policy are likewise covered and contamination losses resulting from perils expressly excluded by the policy are likewise excluded. Any other interpretation—such as plaintiff's restrictive causality argument canvassed below—would, as a practical matter, exclude contamination losses altogether and thereby render the second half of the quoted language meaningless.

 The actions of a third party, such as AUL or its construction contractor, are classic "perils" covered by an "all risks" policy, *see Danzeisen Realty Corp. v. Continental Insurance,* 170 A.D.2d 432, 432, 565 N.Y.S.2d 223 (2d Dep't 1991), and Allianz does not contend otherwise, *see* Tr. at 6. Allianz urges, however, that these third-party actions were not a "proximate" cause of Nabisco's claimed loss and that only such losses as are "proximately" caused by non-excluded perils qualify for coverage.

To be sure, the exclusion language itself makes no mention of "proximate" cause but simply uses the unqualified verb "results." Allianz argues, however, that the law of New York will imply such a term so as not to make the coverage unlimited in scope and that New York takes a narrow view of what constitutes proximate causality. *See, e.g., Pan American* at 1006; *Album Realty Corp. v. American Home Assurance Co.,* 80 N.Y.2d 1008, 1010–11, 592 N.Y.S.2d 657, 607 N.E.2d 804 (1992); *Kosich v. Metropolitan Property & Casualty*

**256**

*Insurance Co.,* 214 A.D.2d 992, 992, 626 N.Y.S.2d 618 (4th Dep't 1995).

To assume, *arguendo,* the correctness of this legal implication avails Allianz nothing, however, for Allianz has failed to adduce any competent evidence that rebuts Nabisco's substantial showing that the failure to contain the TMB at the AUL warehouse was not only the proximate, but indeed the sole practical cause of the contamination of Nabisco's insured products. Closely scrutinized, Allianz' argument is no more than a verbal construct: that since the contamination by TMB was the cause of the loss and since the failure to contain the TMB was the cause of the contamination, the failure to contain the TMB was not the "proximate" cause of the loss because it was one step removed. But this is nothing but word-play. For all its legal baggage, "proximate cause" has its roots in common sense practicalities, and on the facts here posited it is crystal clear as a practical matter that the damage that Nabisco suffered because its food was contaminated with TMB resulted directly, immediately, and therefore "proximately" from TMB's being left behind in the warehouse. Thus, on any fair interpretation of the exclusionary language, the damage to the insured food for which Nabisco here seeks recovery resulted from a non-excluded "peril," namely, a third-party's actions.

For the foregoing reasons, the plaintiff's motion for summary judgment is denied, defendants' motion for summary judgment is granted, and the complaint is dismissed. Clerk to enter judgment.

SO ORDERED.