CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO CERTIFICATE NO. 986557, Plaintiff–Appellee,

v.

Warren RYCHEL, Defendant–Appellant.

No. 03CA1959.

Colorado Court of Appeals, Division III.

June 30, 2005.

Certiorari Granted Jan. 23, 2006.

Cage Williams Abelman & Layden, P.C., Patricia A. Thatcher, Denver, Colorado; LeBoeuf, Lamb, Greene & MacRae, L.L.P., Vincent J. Davitt, Allyson S. Taketa, Los Angeles, California, for Plaintiff–Appellee.

Hopkins & Tschetter, P.C., Mark Tschetter, Aurora, Colorado; Riley & Hurley, Robert F. Riley, Mark S. Demorest, Dearborn, Michigan, for Defendant–Appellant.

Opinion by: Judge CARPARELLI.

Defendant, Warren Rychel, appeals summary judgment in favor of plaintiff, Certain Underwriters at Lloyd's London Subscribing to Certificate No. 986557 (Underwriters). The judgment declared that the professional athlete disability insurance Underwriters

sold Rychel does not cover his claimed disability. We affirm.

Rychel was a left wing for the Colorado Avalanche National Hockey League (NHL) team when Underwriters sold him a professional athlete disability insurance policy. He filed a claim after his left hand was injured in a fight during a game. Underwriters denied the claim and filed a complaint for declaratory relief, seeking a determination that Rychel is not entitled to benefits under the policy. Rychel counterclaimed, alleging bad faith and breach of contract.

Underwriters sought summary judgment, arguing, among other things, that Rychel's injury did not result from an unexpected event as required by the policy and that he was not permanently totally disabled under the terms of the policy.

In his response, Rychel submitted evidence that, although his position on the ice was that of a left wing, his role was that of an "enforcer," which required him to play a particularly tough physical game and to engage in fights with opposing players. He contended that his injury prevented him from forming a tight fist and, thus, rendered him unable to fight effectively. And he asserted that because he could no longer fight effectively, neither the Avalanche nor other NHL teams had signed him to play for them. Based on these contentions and others, he argued that he is entitled to coverage because he is totally disabled from participating in professional hockey as an enforcer.

Underwriters then filed several motions to strike documents Rychel submitted with his response and to preclude the use of other matters identified through discovery. The court granted most of Underwriters' motions.

In a separate order, the trial court also granted Underwriters' motion for summary judgment, ruling that Rychel is not entitled to disability benefits because the injury did not occur as a result of an unexpected event. The court explained that because Rychel intentionally engaged in a fight, he cannot claim that the event that resulted in his injury was unexpected. Having concluded that summary judgment was appropriate as

to this issue, the court did not consider the other arguments raised in the briefs.

## I.

The pertinent terms of the insurance policy are as follows:

In the event that the insured sustains Bodily Injury caused in and of itself by an Accident occurring during the Policy Period and which, solely and independently of any other cause, results in the Total Disablement directly culminating in the Permanent Total Disablement of the insured and providing the Total Disablement commenced within six (6) months of the date of such Accident, then the Insurer agrees to pay the benefits, stated in the Schedule, to the insured.

The policy defines "accident" as a "single, sudden, and unexpected event, which occurs at an identifiable time and place and which causes unexpected [b]odily [i]njury at the time it occurs."

## II.

Rychel contends that the court erred when it granted summary judgment to Underwriters based on the conclusion that Rychel's injury did not result from an "accident." We are not persuaded.

We review summary judgment de novo, applying the same standards that govern the trial court's determination. Summary judgment is warranted only when there is a clear showing that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). The moving party has the initial burden of showing that there is no genuine issue of material fact. The burden then shifts to the nonmoving party to establish that there is a triable issue of fact. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023 (Colo.1998). We view all evidence properly before the trial court in the light most favorable to the nonmoving party, give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the evidence, and resolve all doubts as to the existence of a

material fact against the moving party. *Luttgen v. Fischer*, 107 P.3d 1152 (Colo.App. 2005).

## A.

In accordance with the policy's definition of accident, both the causative event and the resulting injury must be unexpected. The policy does not define "unexpected" or "event."

## B.

■ We enforce insurance contracts as written, giving the words and phrases their plain and ordinary meaning. *Thompson v. Md. Cas. Co.*, 84 P.3d 496 (Colo.2004). "Courts should not rewrite insurance policy provisions that are clear and unambiguous." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999).

■ "[W]hether a policy term is ambiguous is not determined in a vacuum, but by use of an objective standard within the context of circumstances at issue." *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo.App. 1996). "A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation." *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994); *see Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58 (Colo.1990). "[W]hen a contractual provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured." *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990).

■ In addition, when the terms of an agreement are ambiguous or are used in a special or technical sense not apparent from the contractual document, a court may consider extrinsic evidence of the meaning of such terms, such as evidence of local usage and of the circumstances surrounding the making of the contract. "However, the court may not consider the parties' own extrinsic expressions of intent." *KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 777 (Colo. 1985).

## C.

■ The trial court concluded that there was no genuine issue of material fact as to whether an accident occurred and that, as a matter of law, the event that caused Rychel's injury was not an accident. It reasoned that, as an enforcer, Rychel expected to fight and, in this instance, intended to fight, intended to hit the other player, and expected to place his fist in a position of peril when he intentionally hit the opposing player. The court concluded that Rychel cannot be heard to say that a fist fight was an unexpected event and, although Rychel may not have expected his hand to get caught in the other player's hockey sweater, that is not the governing factor. The event was not unexpected because Rychel's actions precipitated or intentionally contributed to it.

Thus, the trial court concluded that "event" means the precipitating event, the circumstances without which Rychel's hand would not have become entangled and the injury would not have occurred.

Rychel argues that examination of the fight and its component parts reveals that his injury occurred *not* as a result of an expected punch, a probable strike of a fist, or an anticipated physical blow; rather, it occurred when his hand inadvertently got caught in the fabric of his opponent's sweater. He argues that a legitimate inference is that he was hurt in an unexpected event and that summary judgment was improper because there is a genuine issue of material fact.

Thus, Rychel argues that "event" means only the precise moment when his hand became tangled in the opponent's sweater and does not refer to the general circumstances immediately preceding that moment. We disagree.

Indeed, athletes are often unexpectedly injured as the result of intentional efforts and expected events inherent in their sports. And, as Rychel contends, if "event" means the precipitating event, the policy would not provide coverage if his injury had been caused by expectedly putting himself in the path of a puck in an effort to block it, or by expectedly checking an opposing player. Although these outcomes might be surprising

or disconcerting, they would be consistent with the plain and ordinary meaning of the words in the policy.

However, Rychel's argument that "event" refers only to the moment of the injury would lead to the same result. When blocking the puck, the moment of the injury would be the puck's contact with the player, which the player could not argue was unexpected. When checking an opponent, the moment of the injury would be the contact between the two players, their pads, their sticks, and the boards, which the player initiating the check could not argue was unexpected. Thus, although Rychel's approach might result in coverage in his case, we are not persuaded that it reveals a reasonable alternative meaning of the phrase "sudden and unexpected event" or a flaw in the meaning applied by the trial court.

### D.

Rychel contends that the court's rationale conflicts with the purpose of the policy because it would eliminate coverage for a hockey player for all expected physical contact that occurs in the course of a game. He argues that players routinely expect to block shots or to check opposing players and that, under the court's rationale, they would not be covered if they experienced an unexpected injury. We are not persuaded.

The purpose of the policy is embodied in the insuring agreement. Under the insuring agreement, Rychel is entitled to benefits when an accident causes injury that renders him completely and totally unable to participate in his occupation as a hockey player. In other words, its purpose is not merely to provide benefits if Rychel becomes permanently totally disabled, but to provide benefits if that occurs as the result of an accident. For example, he would be entitled to benefits if an automobile accident caused injury that rendered him permanently totally disabled from his occupation as a hockey player. This would be so even if the disability did not render him unable to otherwise earn substantial income as a nonplayer in professional hockey or in another occupation. We perceive no basis to conclude that the purpose of the policy was otherwise.

### E.

We conclude that the phrase "sudden and unexpected event" is clear and unambiguous. We agree with the trial court that the only reasonable interpretation of that phrase is that it refers to the precipitating event without which the injury would not have occurred.

Here, there is no genuine issue regarding the fact that the precipitating event was the fight, that Rychel expected to fight, and that the fight caused the injury. Viewing the evidence in the light most favorable to Rychel, we must accept his account that his hand was injured as the result of getting caught in the other player's sweater. However, it is of no legal consequence whether Rychel's hand was injured as the result of punching the other player, grabbing the other's sweater, or inadvertently getting his hand caught in the other's sweater. What matters is that, for purposes of the policy, the event was the fight.

Thus, there was no genuine issue of material fact: Rychel's injury was caused by the fight, and the fight was not unexpected. Under the terms of the policy and as a matter of law, there is no coverage under the policy.

### III.

Rychel also contends that the trial court erred when it struck an affidavit in which he asserted that he reasonably expected that the policy would provide coverage if, as the result of an injury, he became unemployable. The affidavit stated that when he purchased the disability insurance policy, Rychel expected he would receive benefits if an injury prevented him from continuing to earn a living as a professional hockey player. He also submitted a marketing brochure.

The trial court struck the portion of Rychel's affidavit that stated his expectations regarding the coverage provided by the policy, ruling that the terms of the policy govern and that Rychel's expectations are not relevant. Because the policy is clear and unambiguous, we agree with the court's ruling

and, therefore, perceive no abuse of discretion.

## IV.

Rychel further contends that the trial court erred when it granted several objections and motions to strike and preclude evidence. The evidence included NHL arbitration decisions and excerpts from the *Hockey News Almanac* to show that fighting is commonplace in hockey; his player-agent's affidavit to show that the injury rendered him unemployable in the NHL; his own affidavit to show that he reasonably expected that the policy would provide coverage if he became unemployable, that the injury rendered him unemployable, and that he expected he would receive benefits if an injury prevented him from continuing to earn a living as a professional hockey player; a portion of the NHL Collective Bargaining Agreement pertaining to the Injured Reserve List; his consulting physician's opinion that he is disabled; and a marketing brochure regarding high limit disability insurance for professional athletes.

Because these contentions relate to the issue of whether Rychel was disabled and the court did not address that issue, and because we conclude that summary judgment was proper regardless of the resolution of that issue, we need not consider them.

The judgment is affirmed.

Judge DAILEY and Judge HUME * concur.