**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEPRINO FOODS COMPANY,

      Plaintiff - Appellant/Cross-
      Appellee,

v.

FACTORY MUTUAL INSURANCE
COMPANY,

      Defendant - Appellee/Cross-
      Appellant.

Nos. 04-1319 and 04-1338

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-M-1559 (BNB))**

Michael A. Pope (with J. Christian Nemeth, McDermott, Will & Emery LLP, Chicago, Illinois and Michael G. Bohn, Campbell, Bohn, Killin, Brittan & Ray, LLC, Denver, Colorado on the briefs), McDermott, Will & Emery LLP, Chicago, Illinois for Plaintiff-Appellant/Cross-Appellee.

Matthew Mersfelder (with Russell E. Yates and Carlos Leal on the briefs), Yates & Leal LLP, Denver, Colorado, for Defendant-Appellee/Cross-Appellant.

Before **KELLY**, **HENRY**, and **MCCONNELL**, Circuit Judges.

**HENRY,** Circuit Judge.

This diversity action stems from a dispute involving the contamination of over eight million pounds of mozzarella cheese manufactured by Leprino Foods Company resulting in damages of $13,589,235.45. Leprino sought coverage under an all-risk insurance policy issued by Factory Mutual Insurance Company ("FM"), which denied the claim, citing the FM policy's "contamination exclusion." Leprino argued first, that the insured cheese was covered under the express terms of the FM policy, and second, that Leprino had a reasonable expectation of coverage under the FM policy such that it had coverage for all changes in flavor for its cheese.

The district court disagreed as to the first claim, granting partial summary judgment because the cheese was clearly contaminated. It submitted the reasonable expectations question to the jury. The jury found that Leprino's expectation of coverage was not reasonable.

Leprino appeals the grant of partial summary judgment, the jury verdict and the district court's denial of its motion for a new trial. FM cross-appeals, arguing that the district court erred when it submitted the doctrine of reasonable expectations to the jury. For the reasons given below, we REVERSE the grant of partial summary judgment and REMAND for a new trial.

2

## I. BACKGROUND

### A. Factual Background

Leprino, a privately-held Colorado corporation, specializes in manufacturing mozzarella cheese and is the largest manufacturer of mozzarella cheese in the United States. Leprino stores vast amounts of newly-manufactured cheese in cold-storage warehouses before shipment, sometimes reaching an inventory of forty million pounds at one time.

In 1998, Leprino sought a three-year "all-risk" property insurance policy to cover risks related to its products, plants, and equipment. Leprino entered negotiations with Arkwright Insurance, a predecessor company to FM. Arkwright issued an All-Risk Policy, effective until November 1, 2001 covering "ALL RISK OF PHYSICAL DAMAGE" except where specifically excluded. The proposed Arkwright Policy contained an exclusion (Exclusion No. 6) stating:

> This Policy does not insure against . . . *contamination* including but not limited to pollution; shrinkage or *change in color, flavor, texture or finish*; all unless such damage directly results from other physical damage not excluded by this Policy[.]

Aplt's App. vol. V, at 1731 (emphasis added).

Leprino sought to delete the language regarding "change in color, flavor, texture or finish," noting that to leave such language in the exclusion "effectively negated any coverage for the product while it was being stored or otherwise." *Id.* vol. IV, at 1163. After Arkwright completed a risk analysis regarding the

3

implications of this request, it was "agreeable to deleting" this exclusionary language. *Id.* at A1165; A1849. On December 11, 1998, Arkwright issued an endorsement stating:

> Exclusion No. 6 is replaced by the following:
>
> 6. contamination including but not limited to pollution; or shrinkage; all unless such damages directly results from *other physical damage* not excluded by this Policy.

*Id.* vol. V, at A1698 (emphasis added).

The next year, Arkwright merged into Allendale Mutual Insurance Company and became FM. FM informed Leprino that, although the name of the insurer had changed, Leprino's "policy rights and obligations and those of [the insurer] have not been altered or changed in any way." *Id.* vol. IV, at A1169. FM sent Leprino the FM Policy as a replacement for the Arkwright policy. The original FM Policy contained exclusionary language nearly identical to that deleted from the Arkwright policy the year before:

> D. This Policy excludes the following unless directly resulting from *other physical damage* not excluded by this Policy:
>
> 1) contamination including but not limited to the presence of pollution or hazardous material.
>
> 2) shrinkage.
>
> 3) changes in color, flavor, texture or finish.

*Id.* at A1882 ("Exclusion D") (emphasis added).

4

Once again, Leprino demanded that the third clause ("changes in color, flavor, texture or finish") be removed, and FM agreed. FM issued a formal endorsement that deleted this clause.

In October 2001, after receiving complaints about an off-flavor in both raw and cooked cheeses, Leprino traced the cheese to a third-party warehouse in Scranton, Pennsylvania. Leprino recalled the cheese and delivered replacement shipments to its customers. Leprino executives investigated and noted a strong odor and an objectionable off-flavor in the cheese stored in the Pennsylvania warehouse. Also noted in the warehouse were spills of fruit juice concentrate on the sides of 55-gallon juice concentrate barrels, on the floor, and on pallets on which food was stored, and generally all over the warehouse. Numerous popsicle products appeared to have been smashed by forklifts in the warehouse. Leprino employees testified that they noted stagnant air and a strong odor in the warehouse.

On October 26, 2001, Leprino notified FM of the possible loss. Testing on the Leprino cheese from the Pennsylvania warehouse indicated that a number of chemicals had contaminated the cheese, including "toluene, ethyl benzene, m/p-xylene, o-xylene, 1, 2, 4 trimethylbenzene, IR-.alpha.-Pinene and Limonene." Aplt's App. vol. V, at A1925. Leprino determined that the cheese was not usable (even as salvage for feed to animals), and it disposed of all 8,220,495 pounds of the cheese in a landfill.

5

In July 2002, FM denied the claim under the FM Policy. FM noted that contamination of the cheese resulted from "exposure to limonene," and FM maintained that the damage was not due to "other physical damage." Thus, FM applied Exclusion D to preclude coverage of Leprino's claim.

B. Procedural History

Leprino filed a complaint against FM (1) alleging breach of contract against FM as a result of FM's denial of Leprino's claim for damages; (2) seeking declaratory judgment regarding the existence of coverage for the same, and (3) seeking coverage under the reasonable expectations doctrine. In its answer, FM admitted that the "loss to Leprino's cheese was caused by contamination from limonene, a chemical found in fruit concentrate also stored at the . . . facility in Pennsylvania. The limonene contamination *altered the flavor and aroma of the cheese*." Aplt's App. vol. I, at A0036; *see also id.* at A0250 (Final Pretrial Order, filed Jan. 12, 2004) (same) (emphasis added). Therefore, according to FM, the contamination was excluded.

The parties filed cross-motions for summary judgment. Leprino contended (1) its loss was covered under the FM Policy because it fell within the "other physical damage" exception to the exclusion, and/or (2) because the "other physical damage" exception is ambiguous, Leprino prevails under the reasonable expectations doctrine. FM countered, arguing the damage to the cheese fell

6

squarely within the contamination exclusion. The district court initially denied

both motions, noting that "the question of whether contamination occurred in this

case or whether there was a change of flavor without contamination is a mixed

question of law and fact requiring participation by the jury." *Id.* at A0243-44.

In April 2004, FM filed motions in limine to exclude certain proposed

expert witness testimony about how the cheese became contaminated.[1] Leprino

sought to present expert testimony regarding its investigation of the damaged

cheese, the effect of spills at the Pennsylvania warehouse, and the results of

testing samples of the damaged cheese. At a hearing on May 6, 2004,

the district court concluded that this expert testimony was "irrelevant" because

the cheese was indisputedly contaminated. *Id.* vol. III, at A0763. "There's no

---

[1] In April 2004 Leprino also filed a renewed motion for summary judgment
based on a purportedly "concealed document" (the "FM Policy analysis") that
supported its theory that the contamination provision in the FM Policy was
ambiguous. Leprino also moved for sanctions against FM for its violation of the
court's discovery rules. Leprino argued that the FM Policy analysis, which had
been produced in an unrelated case, was relevant to whether Exclusion D was
ambiguous and to reasonable expectations. Leprino sought permission to
introduce the FM Policy analysis during trial. The district court elected *not* to
address the motion on the first day of trial.
      Leprino neither sought to amend the pretrial order, nor raised the issue
during trial. Leprino raised the issue only after the jury issued its verdict.
Leprino admits that it neither proffered the document at trial, nor sought to amend
the pre-trial order. We do not agree with Leprino that it sufficiently requested
that the Court admit the exhibit at trial through its motion for sanctions and its
renewed motion for summary judgment. This court will not consider claims that
have been waived or abandoned in the district court. *O'Connor v. City & County
of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990).

7

question here that the flavor of this cheese has been altered as a result of some chemical, we don't know what chemical it is, for sure, or where it came from, but it's changed." *Id.* at A0764. "Whether that change in flavor from contamination is within the policy as a result of the objective expectations of the plaintiff here is a matter for the jury to decide. That's what we're going to trial on." *Id.* The district court thus precluded the introduction of evidence regarding the *cause* of the damage to the cheese.

Leprino's experts proffered testimony about whether the "other physical damage" exception to Exclusion D caused the damage to the cheese. FM challenged Leprino's proffer of evidence regarding spillage in the warehouse as "speculation and conjecture." *Id.* vol. IV, at A1110. The court reiterated that it was not "necessary . . . for the insured to prove what specifically happened that contaminated this cheese." *Id.* at A1112. The court stated it did not "see that spillage is something we need to concern ourselves about." *Id.* The court emphasized that the parties should "focus only on the reasonable expectation . . . *and not on the exception.*" *Id.* (emphasis added).

At the same hearing, the district court clarified its earlier ruling concerning the parties' motions for summary judgment, stating:

> It's apparent to me from the papers that you filed that there is confusion in this case about my view of [the case], and what is to be tried at the forthcoming trial. . . .
>
> The case, of course, is for the loss of cheese as a result of

8

changes in the flavor of the cheese, which was stored in a warehouse in Pennsylvania, and the defendant has denied coverage here by contending that this event is subject to the exclusion for contamination that is in the subject policy.

When we argued these cross-motions for summary judgment, and discussed the meaning of contamination, and also what happened to the cheese, and *I said it was a mixed question of law and fact here, I want to clarify my understanding now.*

In my view, *the exclusion is not ambiguous.* Contamination means that it has been affected, made impure by contact or mixture with a foreign substance, which means in this case, something not within the ingredients in the manufacture of the cheese. . . .

[*T]here's no dispute that this cheese was contaminated, which changed its flavor. . . .* Therefore, the issue to be tried in this case, and to be decided by the jury is whether, given the evidence concerning the negotiations for the policy . . . [it was] objectively reasonable for the plaintiff to understand [it had] coverage . . . . Accordingly, it doesn't seem to me to make any difference what precise chemicals are in there that contaminates the cheese. . . . Both parties agree there is contamination.

*Id.* vol. III, at A0755-58 (emphasis added).

At the trial regarding Leprino's reasonable expectations, the jury found "that [Leprino] believed it had purchased insurance policies [from Arkwright and FM] that covered its cheese stored in the warehouse from contamination that changes the flavor of the cheese." *Id.* vol. III, at A0827. A1558. The jury also found, however, that Leprino's belief was not reasonable "as a result of the statements and conduct of the insurance company." *Id.* Thus, the jury agreed with FM's decision to deny coverage.

Leprino filed a motion for judgment as a matter of law and, alternatively,

9

for a new trial, which the district court denied. Leprino timely filed this appeal.

## II. DISCUSSION

Leprino argues that the district court erred when it granted partial summary judgment to FM and denied Leprino's motion for a new trial because (A) the FM Policy covers Leprino's loss because the damages stemmed from covered "other physical damage"; (B) Exclusion D was ambiguous; and (C) Leprino's expectation of coverage was reasonable. FM, in its cross-appeal, contends that the district court erred when it submitted the question of reasonable expectations to the jury.

For the reasons set forth below, we agree that the district court erred when it granted partial summary judgment to FM, and excluded testimony regarding the application of the "other physical damage" exception to Exclusion D. The trial was incorrectly constrained to consider only the reasonable expectations doctrine. As a result, the district court abused its discretion when it denied Leprino's motion for a new trial, and we address these contentions together. We reverse and remand for a new trial as to the application of Exclusion D and its exceptions and we reject FM's cross-appeal.

**A. The damage to the cheese may have stemmed from a covered source.**

Leprino contends that because the damage to the cheese was caused by the

10

condition of the third-party warehouse, the "other physical damage" exception to Exclusion D applied. Thus, according to Leprino, the district court erred when it denied its motion for summary judgment, and motion for a new trial. In the alternative, Leprino argues that a genuine issue of material fact exists as to the source of the damage. Because we agree that a genuine issue of material fact exists as to the cause of the damaged cheese, we will address these contentions together.

**1. Standard of review**

We review the district court's order granting summary judgment de novo under the same standards employed by the district court under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper only if there is no disputed issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We must examine the record in the light most favorable to the party opposing the motion. *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990).

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir.1999). "We review a district court's exclusion of evidence under an abuse of discretion standard, reversing 'only if we have a firm and definite belief that the trial court made a clear error in judgment.'" *Tanberg v. Sholtis,* 401 F.3d 1151, 1162 (10th Cir. 2005) (quotation marks and internal citation omitted).

11

**2. Application of Colorado law**

In this diversity case, we apply Colorado law and interpret insurance policies as a Colorado court would. *Farmington Cas. Co. v. Duggan*, 417 F.3d 1141, 1142 (10th Cir. 2005). We interpret the insurance contract as a matter of law, and we review de novo the district court's conclusions of law.

"Under an all-risk policy, once the insured demonstrates a loss to the property covered by the policy, the insurance carrier has the burden of proving that the proximate cause of the loss was excluded by the policy language." *Novell v. Am. Guar. and Liability Ins. Co.,* 15 P.3d 775, 778 (Colo. Ct. App. 1999). "The burden is on the insurer to establish the applicability of an exclusion from coverage. Any exclusion must be clear and specific to be enforceable." *Fire Ins. Exchange v. Bentley,* 953 P.2d 1297, 1301 (Colo. Ct. App. 1998).

To obtain the benefit of an exclusion, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation. *See American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991). If the insurer shows that an exclusion applies, "[t]he burden then shifts back to the insured to prove the applicability of an exception to the exclusion." *Public Serv. Co. of Colo. v. Wallis and Cos.,* 955 P.2d 564, 568 (Colo. Ct. App. 1997), *rev'd on other grounds by* 986 P.2d 924 (Colo. 1999).

**3. Application of Exclusion D**

When it granted partial summary judgment to FM, the district court

12

determined that Exclusion D was "not ambiguous" and that the cheese was contaminated, and therefore Exclusion D applied. Aplt's App. vol. III, at A0756.

Here, the parties agree that there is contamination of the cheese. *Id.* vol. III, at A0758. The burden thus shifts to FM to establish the applicability of Exclusion D. *Novell*, 15 P.3d at 778. FM argues that the contamination of the cheese falls within Exclusion D, because "the cheese contained numerous chemical compounds [that the] cheese does not normally, and should not, contain." Aple's Br. at 17.

Leprino argues, however, that even if FM shows that Exclusion D applies, an exception to that exclusion also applies here. The burden falls on Leprino to prove the applicability of an exception the exclusion. *Public Serv. Co. of Colo.,* 955 P.2d at 568. Leprino maintains that the damage to the cheese was covered under the "other physical damage" exception to the FM Policy because the damage stemmed from a covered source, i.e. the condition of the third-party warehouse that stored the cheese. Leprino further contends it was deprived of an opportunity to prove this exception by presenting to the jury any evidence that the damage resulted from that covered source, including observations of "countless spills of juice concentrate" on the floor and on pallets throughout the warehouse. Aplt's App. vol. III, at A0874.

Leprino sought to argue that spills in the warehouse, and the crushing of products such as popsicles by forklifts, released chemicals that caused the damage

13

to Leprino's cheese. Leprino also sought to introduce evidence that two FM representatives would testify "that if there was a spill that caused the off-flavor to the cheese, that would be covered, because it would fall within the [other physical damage not excluded] exception to the contamination exclusion." Aplt's App. vol. III, at A0873. According to Leprino, a jury could find that it was entitled to damages because the contamination resulted from third-party negligence that was covered by the policy, and that the chemical compounds from these spills caused the off-flavor to the cheese. Thus, Leprino contends that the district court erred by precluding the presentation of any evidence in support of the "other physical damage not excluded" exception.

Relying on this court's decision in *Adams-Arapahoe Joint School District v. The Continental Insurance Co.*, 891 F.2d 772, 777 (10th Cir. 1989), FM counters that no exception to Exclusion D applies because nobody knows how, when or where the cheese became contaminated. In *Adams-Arapahoe*, we determined that a policy's exclusion clause operated to provide coverage. Under the clause, coverage was excluded for corrosion "unless such loss results from a peril not excluded in this policy." *Id.* There, the school district sought coverage under its all-risk policy for extensive corrosion in newly constructed roofing. We saw "no other reasonable construction of the clause . . . . [T]he policy still excludes losses due to corrosion with no identifiable non-excluded cause. In effect, the corrosion exclusion applies only to naturally occurring corrosion." *Id.*

14

FM argues that Leprino has not shown that the exception to Exclusion D applies, as is its burden, because Leprino has not pointed to an "identifiable, non-excluded" event that caused the contamination.  FM also contends that, assuming the cheese was contaminated by the general conditions of the warehouse, those conditions would not amount to "other physical damage" that would satisfy the exception to Exclusion D.  *See* Aple's Br. at 24.

We begin our examination applying the axiom that "[w]e enforce insurance contracts as written, giving the words and phrases their plain and ordinary meaning." *Certain Underwriters at Lloyd's London Subscribing to Certificate No. 986557 v. Rychel,* 126 P.3d 234, 236 (Colo. Ct. App. 2005), *cert. granted*, No. 05SC590, 2006 WL 259661 (2006).  It is somewhat difficult to follow FM's argument as to what the "other physical damage" exception may include, except to surmise it encompasses little.   FM's brief clearly argued that the warehouse's condition is not covered "other physical damage."  Aple's Br. at 24.  At oral argument, counsel admitted that sunlight exposure altering the cheese's flavor would be covered, because exposure to sunlight would not be an "infiltration of chemicals or foreign substances like those present here."  Also, at argument, FM's counsel noted that a pipe leak or even a barrel leak causing contamination would be a covered event.  FM seems to be arguing that, because the parties did not agree as to what caused the damage, it must prevail.

Thus, FM reads *Adams-Arapahoe* to require that the source of the

15

contamination be known. Leprino argues that it was denied the opportunity to combat this theory by proffering evidence that these concentrate spills were "other physical damage" constituting an exception to Exclusion D. We note that both sides acknowledge that limonene, a chemical found in fruit juice concentrates, was found in the damaged cheese, in addition to other chemicals. Moreover, FM, in its answer and in the pre-trial order, specifically identified limonene, also stored at the warehouse, as the cause of the contamination that "altered the flavor and aroma of the cheese." Aplt's App. vol. I, at A0036; *see also id.* at A0250.

We reject FM's insistence that we must read *Adams-Arapahoe*'s reference to other "perils" rather than "other physical damage" as precluding coverage here. To adopt that reading would be to render the "other physical damage" exception meaningless.

In this respect, the facts here closely resemble those of *Allianz Ins. Co. v. RJR Nabisco Holdings Corp.*, 96 F. Supp. 2d 253 (S.D.N.Y. 1999). In that case, Nabisco's food products were included under an all-risk policy issued by Allianz and other insurance companies (together, "Allianz"). Shortly after Nabisco began moving its products into a new warehouse, it began receiving complaints regarding a chemical odor and flavor in various products. Nabisco's investigation revealed that, during the warehouse's construction, the concrete floor had been sealed with certain suspect chemicals, which the construction company had failed

16

to properly clean up. The insurer did not dispute that the warehouse was the "source of the contamination." *Id.* at 255.

Nabisco submitted a claim for coverage, which Allianz denied, based on an exclusion clause in the all-risk policy. That clause excluded coverage for "loss or damage caused by or resulting *from contamination unless such loss or damage results from a peril not otherwise excluded*." *Id.* (emphasis added). As the *Allianz* court noted, "[t]his somewhat awkward wording, in effect a double negative, was drafted by the insurers, possibly so as to try to come within the doctrine that places on the insured the burden of demonstrating that an exception to an exclusion applies." *Id.* However, as to the exclusion, the court stated:

> the only reasonable reading of this language is *that contamination losses resulting from perils otherwise covered by the policy are likewise covered* and contamination losses resulting from perils expressly excluded by the policy are likewise excluded. Any other interpretation . . . would, as a practical matter, exclude contamination losses altogether and thereby render the [exception] language meaningless.

*Id.* (emphasis added).

The court further determined that Allianz failed to produce any competent evidence disputing Nabisco's contentions that the chemicals at the warehouse were the proximate and likely the "sole practical cause" of the contamination. *Id.* at 256. "Thus, on any fair interpretation of the exclusionary language, the damage to the insured food . . . resulted from a non-excluded "peril," namely, a third-party's actions." *Id.* at 255.

17

Although there is no known pipe break or spill, we must examine the record in a light most favorable to Leprino. Factual disputes exist as to what precisely caused the contamination, despite FM's suggestion that there was an insufficient amount of fruit concentrate to damage such large quantities of cheese. We note that this argument also relates to disputed facts. Accordingly, we hold that the district court erred when it granted partial summary judgment to FM and when it excluded evidence regarding the application of the exception to Exclusion D.

**B. Ambiguity and Expectation of coverage**

Because we hold that the district court erred when it granted partial summary judgment to FM and excluded evidence of "other physical damage," we need not here address Leprino's arguments regarding the (1) ambiguity of the FM Policy or (2) the jury's verdict that Leprino's expectation of coverage was unreasonable. Because the district court saw no need to consider the "other physical damage" exception, it excluded testimony regarding the reasonableness of Leprino's interpretation of coverage. On remand, the district court should reconsider its holdings regarding expert testimony, and hold a new trial based on the above conclusions concerning the admission of evidence about Exclusion D and any exception.

**C. FM's cross-appeal**

Finally, as to FM's cross-appeal, FM appears to argue that should we disagree with the jury's verdict as to the reasonableness of Leprino's expectations

18

under the policy, that we should then consider FM's argument that the issue of reasonable expectations was erroneously submitted to the jury. Based on our previous holdings that the district court erred in its grant of partial summary judgment to FM and a new trial is warranted, this contention is moot. However, we note that "[t]aking a cross-appeal was neither necessary nor appropriate for this purpose. Only a party aggrieved by the judgment may appeal, and [FM] was 100% successful." *Gooden v. Neal*, 17 F.3d 925, 935 (7th Cir. 1994). FM "was entitled to make clear his position . . . without the need for a cross-appeal." *Id*. We direct FM to bear the costs of the cross-appeal.

## III. CONCLUSION

Accordingly, we REVERSE the district court's grant of partial summary judgment in favor of FM, and we REVERSE the district court's denial of a motion for a new trial. We VACATE the district court's judgment and REMAND for a new trial in accordance with this opinion. We DISMISS FM's cross-appeal.