RENDERED:  JANUARY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1278-MR

MEGA HIGHWALL MINING, LLC                                        APPELLANT


                       APPEAL FROM BOYD CIRCUIT COURT
v.                  HONORABLE JOHN F. VINCENT, JUDGE
                           ACTION NO. 21-CI-00626


CERTAIN UNDERWRITERS AT
LLOYD'S[1] OF LONDON
SUBSCRIBING TO POLICY NO.
B0507CP2100195                                                  APPELLEE



OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Mega Highwall Mining, LLC, appeals the Boyd Circuit

Court's judgment summarily dismissing its claims that Certain Underwriters at

Lloyd's of London (hereinafter Lloyd's) was in breach of its insurance policy for

---

[1]  The record contains inconsistent references to Lloyds versus Lloyd's.  We have opted to use the form we believe to be correct.

refusing to cover equipment trapped during a subsidence event. Having reviewed the briefs, record, and law, we reverse and remand for further proceedings.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Mega Highwall engages in highwall mining that uses specialized equipment to burrow into the sides of mountains to extract coal. Highwall mining comes with certain risks, including the risk of subsidence, which occurs when the mountains collapse inward, causing the mining tunnel to implode. On April 19, 2021, the tunnel where Mega Highwall was drilling collapsed due to subsidence, trapping sixteen add cars and a continuous miner, worth millions of dollars. Mega Highwall attempted multiple times to tow the equipment out of the tunnel, including using specialized equipment, but it was only able to successfully extract one add car. After concluding that additional recovery efforts were not viable due to drilling restrictions and risks of further subsidence, Mega Highwall claimed the loss with its insurer, Lloyd's. Mega Highwall had procured an insurance policy from Lloyd's covering the equipment. After employing a third-party to investigate, Lloyd's denied the claim on the continuous miner and fifteen of the sixteen add cars citing an abandonment exclusion. The sole dispute is the applicability of the policy's abandonment exclusion.

The "all-risks" policy provides that "Covered Causes of Loss means RISKS OF DIRECT PHYSICAL 'LOSS'[, defined as accidental loss or damage,] to Covered Property except those causes of 'loss' listed in the Exclusions."

The policy provides:

**A. COVERAGE**

> We will pay for "loss"[, defined as accidental loss or damage], to Covered Property from any of the Covered Causes of Loss.

. . .

> 3. **COVERED CAUSES OF LOSS**
>
> > Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to Covered Property except those causes of "loss" listed in the Exclusions.

. . .

**B. EXCLUSIONS**

> 1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

. . .

> Abandonment[2] – any physical loss to the insured equipment occurring underground unless retrieved to the

---

[2] The policy at issue is not one self-contained document; rather, the insurance contract adopted the wording and clauses of a Seneca Contractor's Equipment Coverage Form, except a provision excluding coverage for property while located underground. Because the contract must be read

surface at the Insured's expense. Abandonment is defined as "*the relinquishment, giving up or renunciation of an interest or possession, especially with the intent of never again retrieving it*" [sic] Abandonment is still operative even if as a result of local authority or safety inspectorate restrictions being put in place prohibiting the access to the insured equipment.

Mega Highwall filed the underlying action for breach of contract in October 2021, amending the complaint in March 2022 to properly name Lloyd's. In July 2023, Lloyd's moved for summary judgment arguing that the plain language of the policy precluded coverage. Disputing that the exclusion applied, Mega Highwall objected and filed a cross-motion for summary judgment. After hearing arguments, via a September 7, 2023, order, the court granted summary judgment to Lloyd's, and this appeal timely followed.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. This Court's "role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material

---

as a whole, we have quoted the general coverage and exclusionary language from the Seneca form and the abandonment clause from the additional conditions section of the insurance contract.

fact exist[ed] and the moving party was entitled to judgment as a matter of law."

*Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).  Because summary judgment involves only questions of law and not the resolution of disputed material facts, we need not defer to the trial court's decision, and our review is *de novo*.  *Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 381 (Ky. 1992).   Here, the interpretation of the contract is a question of law and we review the trial court's interpretation of the exclusion anew and without deference.  *Vanhook Enters., Inc. v. Kay & Kay Contracting, LLC*, 543 S.W.3d 569, 572 (Ky. 2018).

## ANALYSIS

Mega Highwall argues the court erred in determining that the abandonment exclusion precluded coverage on its claim.  The parties agreed that New York law governs, per the policy.  Accordingly:

> [When] declaring the parties' rights under an insurance policy, this Court must be guided by rules of contract interpretation because [a]n insurance policy is a contract between the insurer and the insured.  Contract interpretation or construction is usually a court function[, and] the court's initial task is to attempt to ascertain the parties' intent from the language of the insurance contract itself.  In that context, the court must construe the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract.

A provision in an insurance policy is ambiguous if it is subject to more than one reasonable interpretation. However, a court should read policy provisions to avoid ambiguities if the plain language of the contract permits. Thus, ambiguity in policy language will not be found to exist merely because two conflicting interpretations may be suggested. Rather, where the parties differ concerning the meaning of an insurance contract, the court will be guided by a reasonable reading of the plain language of the policy.

*Westchester Fire Ins. Co. v. Schorsch*, 186 A.D.3d 132, 140-41, 129 N.Y.S.3d 67, 74 (N.Y. App. Div. 1st Dept. 2020) (internal quotation marks and citations omitted).

With this standard in mind, we turn to the court's determination that the policy exclusion precluded coverage. Although we agree that there is only one reasonable interpretation, we disagree with the court's reading of the exclusion and its conclusion that coverage was precluded. Under New York law, the insurer bears the burden of proving that a given claim falls within an exclusion to an "all-risk" policy such as this. *Allianz Ins. Co. v. RJR Nabisco Holdings Corp.*, 96 F. Supp. 2d 253, 255 (S.D.N.Y. 2000).

The circuit court read the portion of the abandonment clause stating that "any physical loss to the insured equipment occurring underground unless retrieved to the surface at the Insured's expense" as triggering the exclusion (*i.e.*, the failure to retrieve the property from underground is per se abandonment excluding it from coverage). This reading, however, renders the subsequent

-6-

definition of the term "abandonment" wholly superfluous, violating the fundamental rules of interpretation, and must be rejected.

We further disagree that Mega Highwall's inability to retrieve the property alone, regardless of its intent, satisfies the policy's definition of abandonment. Abandonment, as stated above, is defined by the policy as the "relinquishment, giving up[,] or renunciation of an interest or possession, especially with the intent of never again retrieving it[.]" These terms denote conduct, either affirmative or negligent, that expresses Mega Highwall's intentions towards the property.

The court below was persuaded that Mega Highwall's intentions were irrelevant because the policy language provides that "[a]bandonment is still operative even if as a result of local authority or safety inspectorate restrictions being put in place prohibiting the access to the insured equipment." But we do not agree. Critically, this portion of the clause does not define abandonment, the definition being set out in italics. Further, the wording that "abandonment is still operative" contemplates that the critical event has already occurred.

Stated another way, once the insured abandons property, excluding it from coverage, a subsequent inability to retrieve the abandoned property due to access restrictions is not a superseding cause of loss that is covered. Abandonment

must be the cause of the loss, not something that occurs after the cause of the loss.[3] Here, the cause of the loss was the subsidence and there was no evidence that Mega Highwall relinquished its interest in the continuous miner or the add cars intentionally and with no plan to retrieve the equipment. Rather, the uncontested facts indicate that the equipment was being actively employed when the physical loss occurred and that Mega Highwall made various, concerted efforts to recover the property that only ceased when it was determined that extraction was not feasible.

While abandonment can be a cause of a loss that would be excluded under the Lloyd's policy, it was not the cause of the loss herein. Because the property was not abandoned, regardless of the fact that it was not returned to the surface, the abandonment exclusion does not apply. Accordingly, the court erred in granting summary judgment to Lloyd's. Because we are reversing the court's judgment, we need not address Mega Highwall's alternative claims.

---

[3] Consistent with our interpretation, we note that courts have generally applied abandonment exclusions to bar coverage for lost or damaged tools, equipment, or materials which on completion of an operation should have been removed from the premises by the insured but which instead were abandoned there by the insured. *Liberty Mut. Ins. Co. v. Am. Home Assur. Co., Inc.*, 368 Ill. App. 3d 948, 957, 858 N.E.2d 530, 538 (1st Dist. 2006); *see also Shelter Mut. Ins. Co. v. De Shazo*, 955 S.W.2d 234, 238 (Mo. Ct. App. 1997).

**CONCLUSION**

For the foregoing reasons, the judgment of the Boyd Circuit Court is REVERSED and the matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Travis A. Prince
Charleston, West Virginia

BRIEF FOR APPELLEE:

David F. Latherow
Ashland, Kentucky