**Michael PINO and Amy Pino, as parents of deceased Nevin Michael PINO, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 06–7108.

United States Court of Appeals, Tenth Circuit.

Oct. 29, 2007.

Steven T. Horton (Brent Neighbors with him on the brief) of Horton & Neighbors, P.C., Oklahoma City, OK, for Plaintiffs–Appellants.

Jeanette Windsor, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney, with her on the brief), Muskogee, OK, for Defendant–Appellee.

Before McCONNELL, EBEL, and GORSUCH, Circuit Judges.

## CERTIFICATION OF QUESTION OF STATE LAW

NEIL M. GORSUCH, Circuit Judge.

Michael and Amy Pino ask this court to certify to the Oklahoma Supreme Court

the question whether a cause of action existed for the wrongful death of a nonviable stillborn fetus as of September 1–2, 2003. We agree that the resolution of this question may well determine the outcome of the Pinos' suit, and that it is a novel and unsettled matter in Oklahoma law. Accordingly, and as specified below, we grant the motion to certify.

## I. FACTUAL BACKGROUND

Some twenty weeks pregnant, Ms. Pino arrived at the Carl Albert Indian Health Care Facility in Ada, Oklahoma in the early morning of September 1, 2003, complaining of constant cramping and vaginal bleeding. After evaluation, she was diagnosed with a urinary tract infection and released. Approximately three hours after her discharge, the Pinos called for an ambulance to take Ms. Pino back to the hospital because of her increased bleeding and abdominal pain. Upon her admission to the hospital, Dr. John Harvey, an employee of the hospital, performed a vaginal examination and questioned Ms. Pino about her condition. Dr. Harvey diagnosed Ms. Pino with placental abruption, requested that the pediatrician stand by to attend vaginal delivery of the fetus, and ruptured the amniotic sac. At twenty weeks, the fetus was, the parties stipulate, nonviable given the state of available medical technology. The following day the fetus was delivered stillborn.

Mr. and Ms. Pino sought damages for the wrongful death of their fetus, alleging that Dr. Harvey and the hospital rendered negligent medical care and treatment. Given the federal status of the hospital and Dr. Harvey's employment by the U.S. government, the Pinos first proceeded by filing an administrative claim pursuant to 28 U.S.C. § 2401(b), which the government denied. The Pinos thereafter brought this wrongful death action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and 2671, *et seq.,* in the district

court for the Eastern District of Oklahoma. The FTCA provides that the United States shall be liable for "personal injury or death ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

With the government's potential liability dependent on state law, the Pinos conceded that it was not clear whether a wrongful death action existed under Oklahoma law for a stillborn and admittedly nonviable fetus as of September 1–2, 2003. Accordingly, they asked the district court to certify the question to the Oklahoma Supreme Court. The district court declined this invitation and instead proceeded to grant summary judgment for the government, concluding Oklahoma would not have allowed such a claim at that time.

Mr. and Ms. Pino now move this court to exercise its independent authority to certify their question to the Oklahoma Supreme Court. Alternatively, they appeal, asking us to reverse the district court's denial of their motion to certify and to reverse its entry of summary judgment.

## II. STANDARDS FOR CERTIFICATION

A motion for certification may be brought independently and anew to the court of appeals. *See* 10th Cir. R. 27.1. Such a motion requires us to determine whether certification is appropriate as a *de novo* matter without regard to the district court's assessment. *See Soc'y of Lloyd's v. Reinhart,* 402 F.3d 982, 1001–02 (10th Cir. 2005); *Copier v. Smith & Wesson Corp.,* 138 F.3d 833, 838–40 (10th Cir.1998). Certification by this court in no way implies an abuse of discretion by the district court in failing to certify, but only indicates our independent judgment on the question.

*See Trull v. Volkswagen of Am., Inc.,* 187 F.3d 88, 100 n. 11 (1st Cir.1999) ("Our consideration of the renewed request [to certify] makes it unnecessary to determine whether the district court abused its discretion in refusing the earlier one.... [T]he fact that the district court, in the exercise of its discretion, reached a different conclusion from ours does not, on this record, indicate any abuse of discretion.").

The standards governing our independent analysis stem from both state and federal law. Under Oklahoma law, the Oklahoma Supreme Court has the power to answer a question certified to it by any federal court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state." Okla. Stat. tit. 20, § 1602.

■ Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988); *see also* 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, *Federal Practice and Procedure* § 4248 (3d ed.1998). While we apply judgment and restraint before certifying, however, we will nonetheless employ the device in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to

decide it without further guidance. *Delaney v. Cade,* 986 F.2d 387, 391 (10th Cir. 1993); *see Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (finding certification particularly appropriate where the legal question is novel and the applicable state law is unsettled); 17A Wright & Miller et al., *supra,* § 4248.[1] In making the assessment whether to certify, we also seek to give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts. *See Lehman Bros.,* 416 U.S. at 391, 94 S.Ct. 1741 (noting federal certification of state law questions "helps build a cooperative judicial federalism"); *Delaney,* 986 F.2d at 391 (certifying because of "our judicial policy that matters of state law should first be decided by state courts").

### III. REASONS FOR CERTIFICATION

■ The Pinos' request for certification meets these criteria. The parties before us are in full agreement that answering the question whether a wrongful death cause of action for a nonviable stillborn fetus existed as of September 1–2, 2003 may well determine the outcome of this litigation. We cannot disagree with their assessment. After all, should no cause of action exist, the government will be entitled to judgment as a matter of law. If a cause of action does exist, the government's primary defense asserted so far in this litigation will fall.

**1.** Though plaintiffs' counsel indicated that at least one other currently pending case, in addition to the present action, would be affected by the answer to this certified question, a party need not demonstrate any "unique circumstances," such as a large number of affected cases, before we will certify. *Arizo-* *nans for Official English v. Arizona,* 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (rejecting a requirement of "unique circumstances" to justify certification and holding only the presence of "novel, unsettled questions" is necessary).

The novelty of the question is likewise apparent for several reasons. First, Oklahoma's legislature in 2005 amended the wrongful death statute expressly to allow claims like the Pinos'. *See* 2005 Okla. Sess. Law Serv. 200, Section 1 (West) (codified as amended at Okla. Stat. tit. 12, § 1053(F)). Oklahoma, thus, seems to have a strong public policy preference for claims of this nature. At the same time, though, the 2005 amendment does not have retroactive effect. *See* 2005 Okla. Sess. Law Serv. 200, Section 16 (West); *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 631 (Okla.2000). Thus, one might reasonably question whether the amendment was designed to change preexisting law, and at least tacitly suggests that a cause of action for a nonviable stillborn fetus did not exist prior to its enactment. As it happens, however, such is not necessarily the case in Oklahoma. Under Oklahoma law, it is only "[i]f the earlier version of a statute definitely expresses a clear and unambiguous intent or has been judicially interpreted [that] a legislative amendment is presumed to change the existing law." *Samman v. Multiple Injury Trust Fund*, 33 P.3d 302, 307 (Okla.2001). Meanwhile, "if the earlier statute's meaning is in doubt or uncertain, a presumption arises that the amendment is designed to clarify," rather than change, existing law. *Id.* In this case, prior to the 2005 amendment, Oklahoma's wrongful death statute did not express a clear and unambiguous intent to exclude nonviable stillborn fetuses, and neither had the Oklahoma Supreme Court interpreted it to do so. Accordingly, the statutory history, suggestive though it may be, affords us no definitive guidance.

Second, there is no authoritative decision of the Oklahoma Supreme Court on the existence or nonexistence of a cause of action under the state's wrongful death statute as of 2003. What law does exist, moreover, underscores that the question is an open one. The Oklahoma Supreme Court long ago held that the pre–2005 wrongful death statute affords a cause of action for negligent prenatal care if a viable fetus is stillborn. *See Evans v. Olson,* 550 P.2d 924, 928 (Okla.1976). The court also definitively held as early as 1993 that a wrongful death action can be predicated on a prenatal injury occurring before viability, at least when a viable fetus is subsequently born alive. *Graham v. Keuchel,* 847 P.2d 342, 364 (Okla.1993). And, finally, the Oklahoma Supreme Court held that the pre–2005 wrongful death statute affords a cause of action in cases of nonviable fetuses born alive who subsequently die as the result of medical negligence during pregnancy. *Nealis v. Baird,* 996 P.2d 438, 455 (Okla.1999). Thus, while the Oklahoma Supreme Court has addressed a number of permutations involving viable and nonviable fetuses born alive or stillborn under the law governing as of 2003, it simply has not yet addressed the question whether a cause of action existed in cases combining nonviable fetuses and stillbirth.

Third, *Nealis* highlighted the novelty and difficulty of our question. There, the Oklahoma Supreme Court acknowledged that certain aspects of its reasoning could be read to permit wrongful death actions for nonviable, stillborn fetuses, explaining that "much that we have said could apply equally to nonviable, stillborn fetuses." *Id.* at 455. At the same time, the court explicitly limited its holding to nonviable fetuses born alive, indicating that "[f]actors not considered in today's opinion may bear on whether liability should be extended to the wrongful death of a nonviable, stillborn fetus" under the pre–2005 wrongful death statute. *Id.* This careful acknowledgment and reservation makes it both difficult and unwise for this court to predict how the Oklahoma Supreme Court

would decide the question of state law presented by this case.[2]

Fourth, we are aware of only one Oklahoma state court decision directly on point, *Guyer v. Hugo Publishing Co.*, 830 P.2d 1393 (Okla.Civ.App.1991). Because *Evans* only recognized a wrongful death cause of action for a viable unborn child, the Oklahoma Court of Appeals in *Guyer* reasoned that no wrongful death cause of action should exist for the loss of a nonviable stillborn fetus. *Guyer*, 830 P.2d at 1394. But, the appeals court's decision came before *Nealis*, which rather substantially shifted the legal landscape, and the supreme court's explicit reservation in *Nealis* of the exact question presented in *Guyer* indicates that the state's highest court considers it still very much open. Furthermore, the governing Oklahoma statute contemplates certification in exactly these circumstances, where an intermediate court, but not the definitive court of last resort, has spoken to the issue. *See* Okla. Stat. tit. 20, § 1602 ("The Supreme Court [may answer a certified question if] there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.").

## IV. QUESTION CERTIFIED

In light of the fact that its resolution may well dispose of the matter before us,

as well as its novelty and difficulty, we find the question raised by this appeal to be precisely the sort that calls for us to seek the authoritative guidance of the state supreme court. Therefore, on the Pinos' motion pursuant to 10th Cir. R. 27.1 and Okla. Stat. tit. 20, §§ 1601–1611, the United States Court of Appeals for the Tenth Circuit hereby certifies to the Oklahoma Supreme Court the following question of state law which may determine the outcome in this action pending before the court:

> As of September 1–2, 2003, did the Oklahoma Wrongful Death Statute, Okla. Stat. tit. 12, § 1053, afford a cause of action for the wrongful death of a nonviable stillborn fetus?

Pursuant to Okla. Stat. tit. 20, §§ 1602.1 and 1604(A)(3), the Oklahoma Supreme Court may reformulate this question of law.

We direct the clerk of this court to transmit a copy of this certification order to the parties and to forward a copy of this order, together with the parties' briefs (which also display the names and addresses of counsel of record, *see* Okla. Stat. tit. 20, § 1604(A)(4)), to the Oklahoma Supreme Court pursuant to Okla. Stat. tit. 20, § 1603. 1.[3]

---

**2.** Earlier Oklahoma Supreme Court cases of *Padillow v. Elrod*, 424 P.2d 16 (Okla.1967), and *Howell v. Rushing*, 261 P.2d 217 (Okla. 1953), add little clarity to our picture. Both found no cause of action to exist but dealt only with viable (not, as here, nonviable) stillborn fetuses, and *Evans* expressly overruled their holdings. *Evans*, 550 P.2d at 925. Furthermore, the *Nealis* court rejected outright the reasoning underlying *Padillow* and *Howell* (which adopted the rule and reasoning of *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229 (Neb.1951))—namely, that allowing a cause of action would present insurmountable problems of proof and fictitious

claims, *Drabbels*, 50 N.W.2d at 231; *Nealis*, 996 P.2d at 454; that a child born alive cannot maintain an action for injuries received while in its mother's womb, *Drabbels*, 50 N.W.2d at 231; *Nealis*, 996 P.2d at 452 (citing *Evans* ); and that a fetus is part of its mother until birth with no independent "judicial existence," *Drabbels*, 50 N.W.2d at 232; *Nealis*, 996 P.2d at 453.

**3.** Our decision to certify moots the Pinos' appeal from the district court's denial of their motion to certify, as they here receive the remedy requested in that appeal. *See Navani v. Shahani*, 496 F.3d 1121, 1127 (10th Cir. 2007); *Trull*, 187 F.3d at 100 n. 11. We reiter-

ate, however, that our decision to certify in no way impugns the district court's independent judgment on this difficult question. Given our decision to certify, moreover, we need not address the Pinos' summary judgment appeal at this time, and we hold this matter stayed pending resolution of the above certified question.