FILED
United States Court of Appeals
Tenth Circuit

January 11, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DUSTIN E. SULLIVAN; NANA
NAISBITT,

      Plaintiffs - Appellants,

v.

NATIONWIDE AFFINITY INSURANCE
COMPANY OF AMERICA,

      Defendant - Appellee.

No. 20-1063
(D.C. No. 1:19-CV-01948-DDD-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Dustin Sullivan and Nana Naisbitt (Plaintiffs) appeal from the district court's

grant of summary judgment to their insurer, Nationwide Affinity Insurance Company

of America (Nationwide). The court ruled that an "earth movement" exclusion in

Plaintiffs' homeowners insurance policy barred coverage for damage to their house

caused by a rockfall. Exercising jurisdiction under 28 U.S.C. § 1291, we deny

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Plaintiffs' motion to certify legal questions to the Colorado Supreme Court and affirm the district court's judgment.

## I. Background

Plaintiffs' house in Colorado sustained extensive damage when two or three large boulders dislodged from a rocky outcropping and rolled down a steep hillside. One boulder came to rest in the yard, and one or two others struck the house.[1] Plaintiffs filed a claim with their insurer, Nationwide, which hired an engineering firm and a geological firm to investigate. The engineering firm's report (Botic Report) found that "two rocks dislodged from the upper part of the mountain slope . . . accidentally and were not influenced by meteorological conditions such as torrential rain or high winds." Aplt. App., Vol I at 100. The geological firm's report (Trautner Report) observed that "[r]ockfall hazards exist at [Plaintiffs'] property" primarily due to an undercut sandstone outcrop, as "evidenced by numerous rocks from both recent and relict rockfall events that scatter the subject property." *Id.* at 124. The Trautner Report continued:

> It is common for rocks to break apart during impact in a rockfall event as it seems was the case during the [subject] event; however, this is not a given, and there is evidence of boulders in excess of 10 feet diameter having fallen along this slope in the past. There are three large fragments of rock deposited in the . . . event that measure 4 by 2 feet, 3 by 2 feet, and 5 by 4 feet, and now rest in the former closet, former kitchen, and yard, respectively.

*Id.*

---

[1] Plaintiffs claim only one boulder struck the house and then split in two, but whether one or two boulders struck the house is immaterial to our disposition.

After receiving these reports, Nationwide denied coverage under an "earth movement" exclusion in Plaintiffs' insurance policy. The exclusion provides that Nationwide does "not insure for loss caused directly or indirectly by . . . Earth Movement" and regardless of "whether or not the loss event results in widespread damage or affects a substantial area." *Id.* at 226. The term "Earth Movement" is defined as follows:

> Earth Movement means:
>
> a. Earthquake, including land shock waves or tremors before, during or after volcanic eruption;
>
> b. *Landslide*, mudslide, or mudflow;
>
> c. Subsidence or sinkhole; or
>
> d. *Any other earth movement* including earth sinking, rising or shifting;
>
> caused by or resulting from human or animal forces or any act of nature . . . .

*Id.* (emphasis added). The emphasized words in the foregoing quote are at the heart of this appeal, and the policy does not further define them.

After Nationwide denied their claim, Plaintiffs filed suit, asserting claims for breach of contract, insurance bad faith, statutory damages for insurance bad faith, and a declaratory judgment regarding coverage. Nationwide moved for summary judgment. As part of their response to that motion, Plaintiffs submitted a report by a geological engineer (West Report). The West Report offered support for their position that a rockfall is not a landslide and the term "earth" means soil, not rock. *See, e.g.*, *id.*, Vol. II at 298 (opining that "rockfalls and landslides are distinctly

3

different" and that "use of the term landslide to describe a rockfall, or vice versa, is incorrect." (boldface omitted)); *id.* at 294 ("The terms earth and/or soil . . . do not incorporate in-place rock/bedrock and do not address geologic hazard and risk related to rock/bedrock." (boldface omitted)). But the West Report also quoted various sources suggesting that a rockfall is a type of landslide, *see id.* at 293 ("Terminology designating landslide types generally refers to the landform as well as the process responsible for it, e.g. rockfall . . . ." (quotation omitted)), and that a landslide includes the movement of rock alone, *id.* at 295 ("A landslide is a downslope movement of rock or soil, or both . . . ." (quotation omitted)). Plaintiffs also moved to certify the coverage question to the Colorado Supreme Court as a matter of first impression under Colorado law—whether the earth-movement exclusion bars coverage for direct physical loss caused by a rockfall.

The district court denied the motion to certify and granted summary judgment to Nationwide, concluding that the earth-movement exclusion barred coverage. Plaintiffs appeal.

## II. Motion to Certify

Plaintiffs have filed a motion asking us to certify to the Colorado Supreme Court five questions of law related to the earth-movement exclusion. Although we have discretion to certify questions to a "state's highest court according to that court's rules," 10th Cir. R. 27.4(A)(1), we decline to do so here.

Under Colorado law, the Colorado Supreme Court may answer a question of law certified to it that "may be determinative of the cause then pending in the

4

certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the [Colorado] supreme court." Colo. R. App. P. 21.1(a). Accordingly, we will certify a question if it "(1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). In deciding whether to certify, we take into account "that the judicial policy of a state should be decided when possible by state, not federal, courts." *Id.* But we must also bear in mind that, in a diversity case, we have a "duty to decide questions of state law even if difficult or uncertain." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012) (internal quotation marks omitted). We therefore "apply judgment and restraint before certifying," and "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pino*, 507 F.3d at 1236. "When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.*

Applying these tenets, we deny Plaintiffs' motion to certify. As our ensuing discussion illustrates, there is "a reasonably clear and principled course" that we may "follow . . . ourselves." *Id.*

### III. Discussion

**A.    Standards of review**

We review an order granting summary judgment de novo, applying the same standards that district courts apply. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1286 (10th Cir. 2006). A "court shall grant summary judgment if the

5

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We must examine the record in the light most favorable to the party opposing the motion [for summary judgment]." *Leprino Foods Co.*, 453 F.3d at 1286.

In a diversity case such as this, "we apply Colorado law and interpret insurance policies as a Colorado court would." *Id.* at 1287. Because "the Colorado Supreme Court has not addressed the specific issues raised in this appeal, . . . we must predict how that court would rule." *Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir. 2008).

## B.     Interpretation of insurance policies under Colorado law

Under Colorado law, "[i]nsurance policies are subject to contract interpretation." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011). But unlike "regular contracts," which "must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, insurance policies must be given effect according to the plain and *ordinary* meaning of their terms." *Id.* at 1050-51 (citation and internal quotation marks omitted). In determining the plain and ordinary meaning of a term in an insurance policy, the Colorado Supreme Court has eschewed the use of "technical readings" and instead looks to "what meaning a person of ordinary intelligence would attach to" a policy term. *Id.* at 1051.

To that end, the Colorado Supreme Court follows the doctrine of reasonable expectations. *Id.* at 1050. As relevant here, under this doctrine Colorado will not

6

enforce an exclusionary provision "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." *Id.* Courts must read the policy as a whole, not as a collection of isolated terms. *Id.* at 1051. Therefore, "[i]f, based on how an ordinary, objectively reasonable insured would read the whole policy, the question of whether certain coverage exists is susceptible to more than one reasonable interpretation, then the coverage provisions are ambiguous" and must "be construed against the insurer as the drafter of the policy." *Id.* (citation and internal quotation marks omitted). "[T]he question of whether an ambiguity exists is always an objective test: policy terms should be read in the sense in which the insurer had reason to believe they would be interpreted by the ordinary reader and purchaser." *Id.* (internal quotation marks omitted). Nonetheless, the doctrine "does not contemplate the expansion of coverage on a general equitable basis." *Id.* at 1054 (internal quotation marks omitted).

We also keep in mind that the insurer bears the burden of establishing an exclusion is "not subject to any other reasonable interpretation[]." *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991); *see also Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo. 1998) (where an insurer seeks to limit coverage through an exclusionary provision, the exclusion "must be written in clear and specific language").

7

"Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law . . . ." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).

## C.    The earth-movement exclusion applies to the rockfall

The parties' dispute concerning the earth-movement exclusion centers on the meaning of the term "landslide" and the phrase "[a]ny other earth movement including earth sinking, rising or shifting" in the definition of "Earth Movement." Aplt. App., Vol. I at 226.[2]  To resolve this dispute, we first canvass (in chronologic order) a handful of cases from courts other than Colorado state courts (most of which Nationwide relies on) that have concluded an earth-movement exclusion barred coverage for damage caused by a rockfall.  We then explain why we think the Colorado Supreme Court would find those cases persuasive rather than a case from a Colorado state district court, which Plaintiffs heavily rely on, that reached the opposite conclusion.

### 1.  Cases concluding that earth-movement exclusions include rockfall

In *Olmstead v. Lumbermens Mutual Insurance Co.*, the insured's buildings shifted due to adjacent excavation.  259 N.E.2d 123, 124-25 (Ohio 1970).  Although the policy covered damage caused by a landslide, *id.* at 125, the Ohio Supreme Court

---

[2] Plaintiffs also argue that the district court erred by weighing facts, in particular whether more than one boulder struck the house, and evaluating the expert opinions in the Botic, Trautner, and West Reports.  Because the number of boulders and the experts' opinions are immaterial to our analysis, we need not reach these arguments.

determined a landslide had not occurred, because the "ordinary meaning of [landslide] is the 'sliding down of a mass of soil *or rock* on a steep slope,'" *id.* at 127 (emphasis added) (ellipsis omitted) (quoting Random House, THE AM. COLL. DICTIONARY).

In *Dupps v. Travelers Ins. Co.*, the roof of a cave near the top of 30-foot bluff partially collapsed, sending down rocks that damaged the plaintiffs' property. 80 F.3d 312, 313 (8th Cir. 1996). The insurer denied coverage based on an exclusion for damage cause by "any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence, earth sinking, rising or shifting." *Id.* (brackets and internal quotation marks omitted). Relying on a dictionary definition of "landslide" as 'the downward falling or sliding of a mass of soil, detritus, *or rock* on or from a steep slope,'" *id.* at 314 (emphasis added) (quoting THE RANDOM HOUSE DICTIONARY OF THE ENG. LANGUAGE 1080 (2d ed. 1987)), the Eighth Circuit held that the plain and ordinary meaning of "'landslide' includes rocks falling down a bluff," *id.*

Next, in *Murray v. State Farm Fire & Casualty Co.*, several large boulders and rocks fell from a man-made highwall and damaged the plaintiffs' house. 509 S.E.2d 1 ,5 (W. Va. 1998). The insurer denied coverage based on an exclusion for losses caused by a landslide or erosion. *Id.* at 6. Relying primarily on *Olmstead* and *Dupps*, *see id.* at 7, the West Virginia Supreme Court held that "the plain, ordinary meaning of the word 'landslide' in an insurance policy contemplates a sliding down of a mass of soil *or rock* on or from a steep slope," *id.* at 8 (emphasis added).

In *Parker v. Safeco Insurance Co. of America*, a single large boulder fell from a hillside several hundred feet above the plaintiffs' cabin, severely damaging it. 376 P.3d 114, 116 (Mont. 2016). The insurer denied coverage based on an earth-movement exclusion defining "earth movement" as, among other things, "the sinking, rising, shifting, expanding or contracting of earth," including "landslide." *Id.* The Montana Supreme Court held that "the term 'earth' includes more than just soil such as that found in a garden. Reasonable people would recognize that rocks of all sizes ordinarily comprise more or less of the surface of the earth upon which we live." *Id.* at 118. The court found support for this view (1) in the fact that the exclusion included "landslides and lava flow as examples of earth movement," *id.*; (2) in cases "reflect[ing] the common understanding of the term landslide as a movement, falling or sliding of whatever is on the surface of the earth and some distance below the surface," *id.* (citing *Dupps* and a Montana state district court case (*Deschner*); and (3) in cases that have concluded a landslide "includes movement of 'soil *or* rock on or from a steep slope,'" *id.* at 119 (emphasis added) (quoting *Murray*, 509 S.E.2d at 8, and citing *Dupps* and *Deschner*). The *Parker* court also concluded that "[t]he clear examples of earth movement provided in the policy" ("earthquake, landslide, mudflow, mudslide, along with volcanic blast, volcanic explosion, shockwave, lava flor, lahars and fallout of volcanic particulate matter") made "it clear that [the earth-movement exclusion was] not limited to movement of soil" but was instead "clearly intended to be broadly inclusive of all natural materials that comprise the surface of the earth, including rocks and soil." *Id.*

10

Most recently, the United States District Court for the District of Colorado decided *Bulinski v. State Farm Fire & Casualty. Co.*, No. 16-CV-02066-RPM, 2017 WL 2459751 (D. Colo. June 7, 2017). There, the insurer denied coverage for damage caused by a single large rock that fell from a cliff face and damaged plaintiffs' Colorado house based on an exclusion defining "earth movement" as, in relevant part, "the sinking, rising, shifting, expanding or contracting of earth" including "landslide" and "movement resulting from . . . any other external forces." *Id.* at *1. Although the district court did not discuss the doctrine of reasonable expectations, the court concluded that the plaintiffs' loss "clearly and unambiguously" fell within the dictionary definition of "landslide" as "'the downward falling or sliding of a mass of soil, detritus, *or rock* on or from a steep slope.'" *Id.* at *2 & n.2 (emphasis added) (quoting *Dictionary.com Unabridged*[3]). The court also determined the event fell "within the broader [policy] language excluding the 'sinking, rising, shifting, expanding or contracting of earth,' and 'movement resulting from any other external forces.'" *Id.* at *2 (ellipsis omitted) (quoting policy).[4]

_____

[3] *See https://www.dictionary.com/browse/landslide?s=t* (last visited Jan. 4, 2021).

[4] Nationwide also points to *Western United Insurance Co. v. Heighton*, No. 2:14CV435DAK, 2016 WL 4916785 (D. Utah Sept. 14, 2016), as another example of a case construing the meaning of "landslide" to include a rockfall. However, we find *Heighton* of limited utility. In that case, a large rock mass detached from a cliff and fell onto a steep slope "where it shattered into massive fragments" that "then rolled and bounced downslope until the rock-fall debris reached . . . [and] totally destroy[ed] [a] home." *Id.* at *1. The insurer denied

## 2. Predicting how the Colorado Supreme Court would rule

The common thread in *Olmstead*, *Dupps*, *Murray*, *Parker*, and *Bulinski* is the use, directly or indirectly, of general (as opposed to technical or specialized) dictionary definitions to determine the plain and ordinary meaning of the term "landslide." The Colorado Supreme Court has expressly sanctioned the use of "recognized dictionaries" in "determining the plain and ordinary meaning of words" in an insurance policy. *Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018). We therefore think the Colorado Supreme Court would consider *Olmstead*, *Dupps*, *Murray*, *Parker*, and *Bulinski* persuasive regarding whether the landslide exclusion in Plaintiffs' policy applies to the damage caused to their house, even if, as they maintain, only one boulder struck the house.

We also expect the Colorado Supreme Court would consult several general dictionaries. Having done that ourselves, we find one well-recognized dictionary that, like those used in *Olmstead*, *Dupps*, and *Bulinski*, defines "landslide" to include the movement of rock alone. *See Landslide*, MERRIAM-WEBSTER.COM DICTIONARY,

---

coverage based on an earth-movement exclusion that included "landslide" and "any other earth movement." *Id.* The district court upheld the denial of coverage based solely on the ordinary meaning of "landslide" as stated in *Dupps*, *Murray*, and *Parker*. *Id.* at *2-3. But the court said the case was not one "where a single 2700 ton rock broke off of an overhang and fell directly onto a house below without coming into contact with any other soil or organic materials." *Id.* at *3. Instead, the rock "broke off, hit a steep slope, and triggered a downward shifting of a mass of rocks and soil toward [the] house," which, the court said, was "a plain and ordinary example of a landslide." *Id.* Consequently, *Heighton* is materially distinguishable from our case, which involves two or three falling rocks, only one or two of which hit Plaintiffs' house, and no soil.

12

Merriam-Webster (2021) (defining "landslide" as "the usually rapid downward movement of a mass of *rock*, earth, *or* artificial fill on a slope" (emphasis added).[5] However, we also find two other recognized dictionaries that define "landslide" as consisting of earth *and* rock. *See Landslide*, AM. HERITAGE DICTIONARY OF THE ENG. LANGUAGE (5th ed. 2020), Houghton Mifflin Harcourt Publ'g Co. (defining "landslide" as "[t]he downward sliding of a relatively dry mass of earth *and* rock" (emphasis added))[6]; *Landslide*, CAMBRIDGE ENG. DICTIONARY (2021), Cambridge Univ. Press (defining "landslide" as "a mass of rock *and* earth moving suddenly and quickly down a steep slope") (emphasis added))[7].

To be sure, the Colorado Supreme Court has held that where recognized dictionaries differ on the meaning of a term in an insurance policy, the term is ambiguous and therefore construed against the insurer, at least where construing the term in favor of the insurer would be inconsistent with other portions of the policy. *See Hecla Min. Co.*, 811 P.2d at 1091-92. That is not the case here. Reading the earth-movement exclusion as a whole, as we must, *see Bailey*, 255 P.3d at 1051, the examples of earth movement in the exclusion, together with the catch-all "any other earth movement" provision, convince us the exclusion was "intended to be broadly

---

[5] *See* https://www.merriam-webster.com/dictionary/landslide (last visited Jan. 4, 2021).

[6] *See* https://ahdictionary.com/word/search.html?q=landslide (last visited Jan. 4, 2021).

[7] *See* https://dictionary.cambridge.org/us/dictionary/english/landslide (last visited Jan. 4, 2021).

inclusive of all natural materials that comprise the surface of the earth, including rocks and soil," *Parker*, 376 P.3d at 119.

Moreover, the fact that an objective, reasonable reader of the term "landslide" could view it either as soil, a combination of rock and soil, or, as in this case, two rocks falling without soil, one of which struck the house, does not make the term ambiguous. As we have seen, "landslide" is variously defined to include *all* of these types of movement, so the term "landslide" in Plaintiffs' insurance policy is not ambiguous. *See Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App. 1996) (explaining that "the fact that terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms" (internal quotation marks omitted)). It would be unreasonable for an ordinary reader to think that damage caused by soil-only and soil-and-rock slide events would not be covered but damage caused by a rock-only slide event would be.

Regardless, even if a rockfall consisting of two boulders and no soil were not a landslide, it would come within the catch-all provision—"any other earth movement including earth sinking, rising or shifting," Aplt. App., Vol. I at 226. The fact that dictionary definitions of "landslide" include a combination of soil *and* rock indicates that "earth" in the catch-all provision includes more than just soil—it includes the "sinking, rising or shifting" of rock alone.

Having explained why we think the Colorado Supreme Court would find the earth-movement exclusion applicable here, we must explain why we disagree with

14

Plaintiffs that it would instead follow *Kresge v. State Farm Fire and Casualty Co.*, No. 2011CV008352 (Colo. Dist. Ct. Nov. 4, 2012). In *Kresge*, a single boulder rolled down a slope and damaged a house. *Id.*, slip op. at 1.[8] The insurer denied coverage based on an exclusion for "earth movement," which the policy defined as "the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not . . . includ[ing], but . . . not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compactions, site selection or any other external forces," and "volcanic explosion or lava flow." *Id.* at 3.

The state district court concluded that the exclusion was ambiguous with regard to the movement of a single boulder. The court gave several reasons in support, but we think none of them, taken alone or together, would persuade the Colorado Supreme Court to follow *Kresge* and conclude that the earth-movement exclusion here, which is similar to the one in *Kresge*, does not apply to the damage Plaintiffs' house sustained.

First, *Kresge* cited cases from state appellate courts outside Colorado finding similar or identical earth-movement exclusions ambiguous, *id.* at 8-9, and reasoned that "the fact that there is so much judicial disagreement about the earth-movement exclusion supports the Court's conclusion," *id.* at 9. But the ambiguities in those

---

[8] Although *Kresge* is available on Westlaw, *see* 2012 WL 8499731, the text there contains some typographical errors and omits a table containing the insurance policy's earth-movement exclusion. We therefore cite to the slip opinion, which is separately available as a PDF file in the upper left-hand corner of the Westlaw page.

cases concerned whether the exclusion applied to human-caused events.[9]  That the

courts in those cases found an ambiguity regarding causation is irrelevant here

because the exclusion in Plaintiffs' policy specifically applies to earth movement

"caused by or resulting from human or animal forces or any act of nature," Aplt.

App., Vol. I at 226.  We think it unlikely that the Colorado Supreme Court would be

persuaded by *Kresge*'s reliance on these materially distinguishable cases to determine

that the exclusion here is ambiguous.[10]

Another reason *Kresge* gave in support of its conclusion that the

earth-movement exclusion there was ambiguous was that it was simply "unclear"

whether the exclusion applied "to a single boulder, as opposed to a landslide" and, if

it did not apply to a single boulder, "how many boulders are required before the event

---

[9] *See Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672-74 (Nev. 2011) (determining exclusion was ambiguous regarding whether human-caused event— damage from soil expansion due to a leaky water pipe—was excluded from coverage); *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877-78 (N.Y. 2009) (same regarding damage due to adjacent excavation); *Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 134-36 (Okla. Civ. App. 2005) (same regarding damage caused by leaky water pipe due to shift in human-placed sand fill beneath home's floating slab); *Murray*, 509 S.E.2d at 9 (same regarding damage due to rockfall from man-made highwall, after first determining, as we discussed above, that "landslide" means "a sliding down of a mass of soil or rock on or from a steep slope," *id.* at 8); *Bly v. Auto Owners Ins. Co.*, 437 So.2d 495, 497 (Ala. 1983) (same regarding damage caused by vibrations of passing vehicles).

[10] In a separate part of its opinion, *Kresge* addressed the Alaska Supreme Court's determination in *State Farm Fire & Casualty Co. v. Bongen* that an earth-movement exclusion identical to the one in *Kresge* was "not ambiguous" and "encompasses both natural phenomena and human processes."  925 P.2d 1042, 1046 (Alaska 1996).  Paradoxically, *Kresge* declined to follow *Bongen* because in *Kresge*, "the mechanism or cause of the boulder rolling down the hill [was] irrelevant under the policy."  *Kresge*, slip op. at 10.

16

becomes an excluded landslide?" *Kresge*, slip op. at 9 (internal quotation marks omitted). But *Kresge* did not consult any dictionary definitions of "landslide" or discuss the portion of the earth-movement definition describing "the sinking, rising, shifting, expanding or contracting of earth," *id.* at 3, which is substantially similar to the catch-all "any other earth movement" clause here. As we have already discussed, the plain and ordinary reading of those terms brings the event here within the scope of the exclusion.

The failure to consult any dictionary definition of "landslide" also undermines yet another reason *Kresge* gave for concluding that the exclusion was ambiguous—that "reasonable consumers would certainly differentiate between a 'landslide' and a single boulder rolling down a hill, and expect the latter to be covered." *Id.* at 10. Absent at least a dictionary definition of "landslide" supporting its view, the court's determination is wholly conclusory. Moreover, although Plaintiffs' view that only one boulder struck their house may be accurate, no one disputes that two boulders fell, the second coming to rest in the yard.

Finally, *Kresge* said the insurer's interpretation of the exclusion was "contrary to ordinary expectations and common sense," because under that interpretation, "a decorative boulder which rolled off a flatbed truck of a landscaping company would be an included peril, but would be excluded if it rolled down the hill." *Id.* We think the Colorado Supreme Court would find this observation of little value because hypotheticals are unhelpful in determining whether an exclusion is ambiguous with regard to the facts of a particular case. *See Juniel*, 931 P.2d 511 at 513 (explaining

17

that a policy term may be construed as ambiguous when applied to one situation but not when applied to a situation that falls within the scope of the term).[11]

In sum, we do not think the Colorado Supreme Court would follow *Kresge*. We are instead convinced it would be persuaded by a combination of *Olmstead*, *Dupps*, *Murray*, *Parker*, *Bulinski*, and general dictionary definitions of "landslide" that an ordinary, reasonably objective insured would read the earth-movement exclusion as excluding coverage for the event here, either as a "landslide" or as "any other earth movement including earth sinking, rising or shifting," Aplt. App., Vol. I at 226.

---

[11] In a preamble to its analysis, *Kresge* noted that the historic use of earth-movement exclusions was to protect insurers against events like earthquakes that were hard to predict, difficult to insure against, and caused widespread damage rather than damage to an individual policyholder. *See Kresge*, slip. op. at 7. Such usage is irrelevant here, because the earth-movement exclusion in Plaintiffs' policy applies "whether or not the loss event results in widespread damage or affects a substantial area." Aplt. App., Vol. I at 226. Indeed, in a case *Kresge* failed to acknowledge, the Colorado Court of Appeals had determined that earth-movement exclusions that "unambiguously exclude coverage for 'any' expansion or other movement of land, earth, or mud" are not ambiguous on the ground that they could be read as applying only to large-scale or catastrophic damage. *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1036 (Colo. App. 2005), *rev'd on other grounds sub nom. Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo. 2007). Therefore, to the extent the historic use of earth-movement exclusions informed the result in *Kresge*, we think the Colorado Supreme Court would find it unhelpful in determining whether an ambiguity exists in the exclusion here.

## IV.  Conclusion

We affirm the district court's judgment and deny Plaintiffs' motion to certify.

Entered for the Court

Joel M. Carson III
Circuit Judge